### APPEALS OF PITTSBURGH GRINDING WHEEL CO.

Docket Nos. 2558, 2559.   Submitted June 6, 1925.   Decided September 30, 1925.

1. The prices at which properties are knocked down at a sale conducted by a trustee in bankruptcy are not conclusive of the actual cash value of such assets when transferred by the purchasers to a corporation in exchange for corporate stock, and the true actual value of such properties may be proven by competent evidence.

2. Evidence contained in the record of this appeal *held* sufficient to prove that the actual cash value of properties paid in for stock was not less than the par value of stock specifically issued therefor.

*Walter W. McVay, Esq.,* for the taxpayer.
*Robert A. Littleton, Esq.,* for the Commissioner.

Before Smith and Trussell.

The facts and issues involved in the two above-entitled appeals are identical, except as to the amounts of the deficiencies and the years involved. The hearings, by agreement of counsel, were consolidated. These appeals are from determinations of deficiencies in income and profits taxes for the calendar year 1917 in an amount of $10,548.78, and for the calendar years 1918 to 1920, inclusive, in an amount of $930.18. The determinations appealed from result from the Commissioner's reduction of asset values in the computation of invested capital and the allowance of a depreciation deduction based upon such reduced values.

### FINDINGS OF FACT.

The taxpayer is a corporation organized under the laws of Pennsylvania on January 25, 1916, with an authorized capital stock of $100,000, for the purpose of acquiring the assets of the Pittsburgh Emery Wheel Co., bankrupt, of Rochester, Pa.

The Pittsburgh Emery Wheel Co., the predecessor corporation, had become financially involved on or about April 30, 1915, and was placed in the hands of a receiver. Operations of the plant were carried on by the receiver at a profit. Bankruptcy proceedings followed and creditors of the Pittsburgh Emery Wheel Co., realizing that, should the property of the said company be sold to outside interests, their claims would probably be a total loss, entered into an oral agreement whereby one Frank W. Gilbert was appointed trustee by the parties interested, to represent the creditors at a sale by the trustee in bankruptcy and purchase the assets of the Pittsburgh Emery Wheel Co. In order to acquire the funds necessary to purchase the assets of the Pittsburgh Emery Wheel Co., letters were mailed to the several creditors, notifying them of an opportunity to contribute toward the necessary purchase price and that they would receive in the taxpayer corporation, then proposed to be organized, sufficient stock to cover their claims and the amounts advanced. The trustee, Frank W. Gilbert, made an offer to the trustee in bankruptcy to purchase all of the assets of the Pittsburgh Emery Wheel Co. for the sum of $16,000, plus a mortgage of $4,652, which the purchasers assumed and agreed to pay. The offer was accepted and the sale of the assets of the Pittsburgh Emery Wheel Co. was consummated on September 20, 1915, for the sum above stated, and an order of court made approving such sale.

Operations of the plant were conducted by Frank W. Gilbert, as trustee of the creditors, from September 20, 1915, until February 22, 1916, at which time deeds and bill of sale were made by said trustee

92208—26——46 .

to the taxpayer, and on said date the board of directors of taxpayer authorized the purchase of the assets of the Pittsburgh Emery Wheel Co. by the issuance of $89,500 par value common stock of the taxpayer. None of the capital assets were sold by Frank W. Gilbert, trustee, while operating the plant from September 20, 1915, to February 22, 1916, when the transfer of assets was made by Gilbert to the taxpayer.

The books of the taxpayer corporation were opened on February 22, 1916, the assets acquired being set up at $89,500, which valuation was based upon the claims of the incorporators against the defunct company, and stock was issued in the amount of $90,000, distributed to the creditors of the Pittsburgh Grinding Wheel Co., which had participated in the purchase of the assets of the Pittsburgh Emery Wheel Co.

The assets acquired by Frank W. Gilbert, as trustee of the creditors, from the Pittsburgh Emery Wheel Co., bankrupt, and transferred by said trustee to the taxpayer on February 22, 1916, were greater in value than the amount paid by said trustee to the trustee in bankruptcy.

#### DECISION.

The deficiency, if any, for each of the years 1917 to 1920, inclusive, should be computed in accordance with the following opinion. Final determination will be settled on consent or on 15 days' notice, pursuant to Rule 50.

#### OPINION.

TRUSSELL: This taxpayer came into being as a result of action by the creditors of the Pittsburgh Emery Wheel Co., a bankrupt. The assets of the bankrupt were about to be offered for sale and sold by the trustee in bankruptcy, and, facing this situation, creditors having claims aggregating $68,848 raised among themselves a cash fund of $16,000, and designated a trustee to act for them and bid on their behalf at the sale by the trustee in bankruptcy. The sale occurred, the trustee of the creditors bid $16,000 in cash on behalf of the creditors and offered to assume a mortgage on the fixed assets in the sum of $4,652. The bid was accepted, the sale was approved by the court, and the assets of the bankrupt were duly transferred to the trustee of the creditors. Thereupon the associated creditors caused the taxpayer corporation to be formed, their trustee conveyed the assets of the bankrupt to the taxpayer, and shares of stock of the taxpayer company were issued to each of the participating creditors in proportion to the amount of their original claims plus the amount

they had contributed toward the cash fund used in the purchase of the assets of the bankrupt. The par value of the stock so issued was $89,500, and the assets acquired were entered upon the books of the taxpayer company at that value. These transactions took place between September 20, 1915, and February 22, 1916.

The books of the bankrupt corporation were not produced at the hearing and there was evidence to the effect that the same were no longer in existence or, if still in existence, that their whereabouts is unknown to all the interested parties. Several witnesses, some of whom had been connected with the bankrupt company, and others connected with the taxpayer at the time of its organization, all of whom were well acquainted with the properties and assets of the bankrupt, testified that in their opinion the assets of the bankrupt had a cash value of upward of $150,000. One witness who had been a director of the bankrupt company testified that the bankrupt had had an actual paid-in cash capital of $90,000; that at one time the bankrupt had an undivided surplus of $10,000, which it had put into plant and equipment and for which it issued a stock dividend; and that a large portion of the funds borrowed from creditors had gone into the purchase of additional equipment and plant facilities. All of this testimony, although secondary and unsupported by accounting records of the bankrupt, carries with it a sense of conviction and leads us to the conclusion that the property acquired by the creditors' organization and later turned in to the taxpayer company in exchange for stock, had a cash value at the time paid in of not less than the par value of the stock issued for such property.

The facts and conditions surrounding the organization of this taxpayer are in many respects similar to the situation considered by this Board in the *Appeal of The Markenheim Co.*, 1 B. T. A. 1240, and the reasoning contained in the opinion of the Board in that appeal is equally applicable to the situation here presented.

We are, therefore, of the opinion that the value of the assets received by this taxpayer in exchange for stock was at least $89,500, and that the taxpayer's invested capital and annual depreciation deduction should be based upon that valuation.

ARUNDELL not participating.