*714 ■opinion.
Trussell:
This taxpayer came into being as a result of action by the creditors of the Pittsburgh Emery Wheel Co., a bankrupt. The assets of the bankrupt were about to be offered for sale and sold by the trustee in bankruptcy, and, facing this situation, creditors having claims aggregating $68,848 raised among themselves a cash fund of $16,000, and designated a trustee to act for them and bid on their behalf at the sale by the trustee in bankruptcy. The sale occurred, the trustee of the creditors bid $16,000 in cash on behalf of the creditors and offered to assume a mortgage on the fixed assets in the sum of $4,652. The bid was accepted, the sale was approved by the court, and the assets of the bankrupt were duly transferred to the trustee of the creditors. Thereupon the associated creditors caused the taxpayer corporation to be formed,-their trustee conveyed the assets of the bankrupt to the taxpayer, and shares of stock of the taxpayer company were issued to each of the participating creditors in proportion to the amount of their original claims plus the amount *715 they had contributed toward the cash fund used in the purchase of the assets of the bankrupt. The par value of the stock so issued was $89,500, and the assets acquired were entered upon the books of the taxpayer company at that value. These transactions took place between September 20,1915, and February 22, 1916.
The books of the bankrupt corporation were not produced at the hearing and there was evidence to the effect that the same were no longer in existence or, if still in existence, that their whereabouts is unknown to all the interested parties. Several witnesses, some of whom had been connected Avith the bankrupt company, and others connected with the taxpayer at the time of its organization, all of whom were well acquainted with the properties and assets of the bankrupt, testified that in their opinion the assets of the bankrupt had a cash value of upward of $150,000. One Avitness who had been a director of the bankrupt company testified that the bankrupt had had an actual paid-in cash capital of $90,000; that at one time the bankrupt had an undivided surplus of $10,000, which it had put into plant and equipment and for which it issued a stock dividend; and that a large portion of the funds borrowed from creditors had gone into the purchase of additional equipment and plant facilities. All of this testimony, although secondary and unsupported by accounting records of the bankrupt, carries with it a sense of conviction and leads us to the conclusion that the property acquired by the creditors’ organization and later turned in to the taxpayer company in exchange for stock, had a cash value at the time paid in of not less than the par value of the stock issued for such property.
The facts and conditions surrounding the organization of this taxpayer are in many respects similar to the situation considered by this Board in the Appeal of The Markenheim Co., 1 B. T. A. 1240, and the reasoning contained in the opinion of the Board in that appeal is equally applicable to the situation here presented.
We are, therefore, of the opinion that the value of the assets received by this taxpayer in exchange for stock Avas at least $89,500, and that the taxpayer’s invested capital and annual depreciation deduction should be based upon that valuation.
Arundell not participating.